PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES DONDERO,<br><br>Defendant. | Adversary Proceeding No.<br><br>No. 20-3190-sgj11 |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

DOCS_NY:42102.3 36027/002

| | |
|---|---|
| JAMES DONDERO, | § |
| | §  Civil Action No. |
| Appellant, | § |
| | §  3:21-cv-00132-E |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| Appellee. | § |

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 2

    A.   Case Background ................................................................................................... 2

    B.   The TRO and Preliminary Injunction ................................................................... 3

LEGAL STANDARD .................................................................................................................. 7

ARGUMENT ............................................................................................................................... 9

    A.   There is No Controlling Question of Law ........................................................... 9

    B.   There is No Substantial Difference of Opinion ................................................. 10

    C.   An Appeal Would Not Advance this Case ........................................................ 11

CONCLUSION .......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page No.**

## CASES

*Carroll v. President & Com'rs of Princess Anne*,
   393 U.S. 175 (1968) .................................................................................................... 14
*Clark–Dietz & Assocs. Engineers, Inc. v. Basic Constr. Co.*,
   702 F.2d 67 (5th Cir.1983) ............................................................................... 7, 8, 10, 11
*Garner v. Wolfinbarger*,
   430 F.2d 1093 (5th Cir. 1970) ...................................................................................... 10
*In re American Freight System, Inc.*,
   153 B.R. 316 (D. Kan. 1993) ........................................................................................ 11
*In re Cella III, LLC*,
   619 B.R. 627 (E.D.La. 2020) ........................................................................................ 12
*In re Cent. Louisiana Grain Co-op., Inc.*,
   489 B.R. 403 (W.D. La. 2013) ............................................................................. 8, 11, 12
*In re Global Marine, Inc.*,
   108 B.R. 1007 (S.D. Tex, 1988) ........................................................................ 7, 11, 14, 15
*In re Hallwood Energy, L.P.*,
   BR 09–31253–SGJ–11, 2013 WL 524418 (N.D. Tex.2013) ....................................... 10
*In re Hunt Int'l Res. Corp.*,
   57 B.R. 371 (N.D.Tex.1985) .................................................................................. passim
*In re Red River Energy, Inc.*,
   415 B.R. 280 (2009) (S.D.Tex. 2009) ......................................................................... 7, 8
*In re Supp. Spot, LLC*,
   No. H–09–1144, 2009 WL 1343165 (S.D.Tex. 2009) ................................................... 8
*Lakedreams v. Taylor*,
   932 F.2d 1103 (5th Cir. 1991) ...................................................................................... 11
*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ...................................................................................................... 14
*Matter of Ichinose*,
   946 F.2d 1169 (5th Cir. 1991) ........................................................................................ 8
*McFarlin v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir.2004) ....................................................................................... 9
*Panda Energy Int'l, Inc. v. Factory Mut. Ins.*,
   3:10-CV-003-K, 2011 WL 610016 (N.D. Tex. Feb. 14, 2011) ............................... 8, 10, 11, 12
*Ryan v. Flowserve Corp.*,
   444 F. Supp. 2d 718 (N.D. Tex. 2006) ................................................................ 8, 9, 10, 11
*Smith v. AET Inc., Ltd.*,
   Nos. C-07-123, 2007 WL 1644060 (S.D.Tex. 2007) ..................................................... 9
*Sunbelt Works, Inc. v. Sommers*,
   2007 WL 954741 (S.D.Tex. 2007) ................................................................................. 8

## STATUTES

28 U.S.C. § 1292 .................................................................................................... passim

## DEBTOR'S OPPOSITION TO JAMES DONDERO'S MOTION FOR LEAVE TO APPEAL PRELIMINARY INJUNCTION

Plaintiff Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor"), and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding") hereby submits this opposition (the "Opposition") to *Appellant James Dondero's Motion for Leave to Appeal* [Docket No. 2][1] (the "Motion") and *Appellant James Dondero's Emergency Motion for Expedited Appeal* [Docket No. 3] (the "Motion to Expedite") (together, the "Motions"), filed by James Dondero ("Appellant"), in connection with the Bankruptcy Court's *Order Granting Debtor's Motion for a Preliminary Injunction Against James Dondero* [Adv. Pro. Docket No. 59][2] (the "Preliminary Injunction"). In support of its Opposition, the Debtor states as follows:

### INTRODUCTION

1. The Bankruptcy Court determined, in a proper exercise of its discretion, that Appellant should be enjoined from interfering with the Debtor's operations and its chapter 11 proceeding in order to prevent imminent and irreparable harm to the Debtor's estate. The Court made its determination after a lengthy evidentiary hearing where the Court admitted substantial documentary evidence into the record and assessed Appellant's credibility. Nevertheless, Appellant seeks the extraordinarily remedy of having the District Court second-guess the Bankruptcy Court's discretionary ruling on this interlocutory order on an emergency basis.

---

[1] Refers to the civil action docket maintained by the United States District Court for the Northern District of Dallas (the "District Court").

[2] Refers to the Adversary Proceeding docket maintained in the Highland Bankruptcy Case.

DOCS_NY:42102.3 36027/002

2. First, there is no emergency. Contrary to Appellant's contention that the Preliminary Injunction impedes his ability to participant in the Appellant's bankruptcy, the Preliminary Injunction expressly states that it "does *not* enjoin or restrain [Appellant] from . . . seeking judicial relief upon proper notice or from objecting to any motion filed in this Bankruptcy Case." As set forth below, Appellant has participated in a contested evidentiary hearing and has filed at least five (5) separate pleadings or documents on the docket in the nineteen days since the Preliminary Injunction was entered.

3. Second, an appeal of the interlocutory order (a) involves no controlling question of law; (b) will not resolve a substantial difference of opinion among courts, and (c) will not advance the underlying case. Instead, Appellant seeks to appeal an order based on an extensive factual record and credibility findings – precisely the type of interlocutory order that is not appropriate for appeal.

4. Third, as discussed in more detail below, Appellant's remaining complaints about the terms and scope of the Preliminary Injunction are simply without merit.

5. For the foregoing reasons, and those set forth below, the Court should deny the Motions.

**FACTUAL BACKGROUND**

**A.     Case Background**

6. On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

7. On October 29, 2019, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the U.S. trustee in Delaware.

8. On December 4, 2019, the Delaware Court entered an order transferring venue of the Debtor's Bankruptcy Case to this Court [Docket No. 186].

9. The Debtor has continued to operate and manage its business as a debtor-in- possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in this chapter 11 case.

10. On December 7, 2021, the Debtor commenced the Adversary Proceeding by filing its *Verified Original Complaint for Injunctive Relief against Appellant*. [Adv. Proc. Docket No. 1] (the "Complaint").  In its Complaint, the Debtor seeks permanent injunctive relief against Appellant, the Debtor's former CEO, preventing him from interfering with the Debtor's operations, management of assets, and pursuit of a plan of reorganization. *See Id.*

**B.    The TRO and Preliminary Injunction**

11. On December 7, 2020, the Debtor filed its *Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Against Mr. James Dondero*, seeking to temporarily and preliminarily enjoin Appellant from, among other things, (i) interfering with, controlling, or influencing the Debtor's business, management, and disposition of assets, (ii) threatening or intimidating the Debtor or any of its agents or employees, and (iii) otherwise violating section 362(a) of the Bankruptcy Code. [Adv. Proc. Docket No. 6] (the "Preliminary Injunction Motion"). **App'x[3] at 1.**  A hearing was held on December 10, 2020, [Adv. Proc. Docket No. 13] (the "TRO Hearing"), and that day, the Court issued the *Order Granting Debtor's Motion for a Temporary Restraining Order Against James Dondero* to prevent irreparable harm to the Debtor pending the Court's hearing on the Preliminary Injunction Motion. [Adv. Proc. Docket No. 10] (the "TRO"). **App'x at 10.**    Specifically, the TRO temporarily enjoined and restrained Appellant from:

---

[3] Refers to the Appendix submitted contemporaneously with this Opposition.

3

(2)(a) communicating (whether orally, in writing, or otherwise), directly or indirectly, with any Board[4] member unless Appellant's counsel and counsel for the Debtor are included in any such communication;

(b) making any express or implied threats of any nature against the Debtor or any of its directors, officers, employees, professionals, or agents;

(c) communicating with any of the Debtor's employees, except as it specifically relates to shared services currently provided to affiliates owned or controlled by Appellant;

(d) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, disposition of assets owned or controlled by the Debtor, and pursuit of the Plan or any alternative to the Plan;
(e) otherwise violating section 362(a) of the Bankruptcy Code (collectively, (a)-(e) constitutes the "Prohibited Conduct"); and

(3) causing, encouraging, or conspiring with (a) any entity owned or controlled by him, and/or (b) any person or entity acting on his behalf, from, directly or indirectly, engaging in any Prohibited Conduct.

*Id.*

12. On December 16, 2020, Appellant filed his *Emergency Motion to Modify Temporary Restraining Order*, seeking modification of the TRO in certain respects. [Adv. Proc. Docket No. 24] ("Appellant's Motion to Modify"). **App'x at 13.** Five days later, on December 23, 2020, Appellant voluntarily withdrew his Motion to Modify. [Adv. Proc. Docket No. 29] (the "Withdrawal of Motion to Modify"). **App'x at 20.**

13. On January 7, 2021, just four weeks after the TRO was entered, the Debtor filed its *Motion for an Order Requiring Appellant to Show cause Why He Should Not Be Held in Civil Contempt for Violating the TRO* [Adv. Proc. Docket No. 48] (the "Contempt Motion"). **App'x at 22.** In its Contempt Motion, the Debtor seeks an order requiring Appellant to show why he should not be held in contempt for violating the TRO for, among other things, (a)

---

[4] The phrase "the Board" refers to the Debtor's independent directors (the "Independent Directors") that were appointed to the board of Strand Advisors, Inc. ("Strand"), the Debtor's general partner.

disposing of the Debtor's property in an attempt to evade discovery; (b) trespassing on the Debtor's property after the Debtor evicted him from its offices precisely because he was interfering with its business; (c) interfering with the Debtor's efforts to execute certain transactions in its capacity as portfolio manager of certain collateralized loan obligations ("CLOs"); and (d) colluding with certain the Debtor's then-employees to act. *See id*. The Contempt Motion is scheduled to be heard next Friday, February 5, 2021.

14. The following day, January 8, 2021, the Court held an evidentiary hearing on the Preliminary Injunction Motion (the "Hearing"). *See* Preliminary Injunction Hearing Transcript (the "Hearing Transcript"). **App'x at 31**. At the conclusion of the Hearing, the Court granted the Motion. [Adv. Proc. Docket No. 59] (the "Order"). **App'x at 236**. In finding that preliminary injunctive relief was warranted, the Court considered overwhelming evidence, including, *inter alia*, (a) Appellant's own sworn testimony enabling this Court to assess his credibility, (b) documentary evidence, such as emails, text messages and other communications illustrating that Appellant had been (i) threatening the Debtor and its employees, (ii) colluding with present and (now) former employees of the Debtor -- including former in-house counsel, Scott Ellington and Isaac Leventon -- in order to coordinate legal strategy against the Debtor, (iii) trespassing into the Debtor's offices after being evicted for his threatening and disruptive behavior, and (iv) otherwise interfering with the Debtor's operations through impeding trades of certain securities and the dispositions of the Debtor's assets. *See, e.g.*, **App'x at 83-84**; **102-06; 110-113**. Specifically, the Court preliminarily enjoined Appellant from:

> (2) engaging in any Prohibited Conduct (as defined above).
>
> (3) causing, encouraging, or conspiring with (a) any entity owned or controlled by him and/or (b) any person or entity acting with him or on his behalf, to, directly or indirectly, engage in any Prohibited Conduct.

5

>   (4) communicating (in person, telephonically, by e-mail, text message or otherwise) with Scott Ellington and/or Isaac Leventon, unless otherwise ordered by the Court.
>
>   (5) physically entering, or virtually entering through the Debtor's computer, email, or information systems, the Debtor's offices located at Crescent Court in Dallas Texas, or any other offices or facilities owned or leased by the Debtor, regardless of any agreements, subleases, or otherwise, held by the Debtor's affiliates or entities owned or controlled by Appellant, without the prior written permission of Debtor's counsel made to Appellant's counsel. If Appellant enters the Debtor's office or other facilities or systems without such permission, such entrance will constitute trespass.

**App'x at 238-39**. Appellant was further ordered to attend all future hearings in this Bankruptcy Case by video, unless otherwise ordered by the Court, after the Court was made aware that he failed to read the TRO, was not aware of its basic terms, and otherwise failed to make any meaningful attempt to understand its scope. *See id.*; **App'x at 199**. The Order specified that its terms would "remain in effect until the date that any plan of reorganization or liquidation resolving the Debtor's case becomes effective, unless otherwise ordered by the Court."[5] **App'x at 238-39**. Ultimately, the Court found that preliminary injunctive relief: (1) is "necessary to avoid immediate and irreparable harm to the Debtor's estate and reorganization process; (2) the Debtor is likely to succeed on the merits of its underlying claim for injunctive relief; the balance of the equities tip in the Debtor's favor; and (4) such relief serves the public interest." *Id.*

15.  Appellant now seeks leave to appeal the Preliminary Injunction in the District Court, on an emergency basis, on the grounds that, in pertinent part: i) it is "designed to prevent Appellant from exercising his legal rights in connection with the Debtor's Plan," (ii) it "unlawfully restricts Appellant's First Amendment right to freedom of speech" by preventing him from communicating with the Debtor's current and former employees, and (iii) it is "over broad, non-specific, vague," and "unclear" as to the acts to be restrained. (Motion to Expedite ¶

---

[5] The Order further specified that Appellant was not prohibited from "communicating with the committee of unsecured creditors (the "UCC") and its professionals regarding a pot plan."

20). For the reasons that follow, Appellant fails to demonstrate that interlocutory appeal of the Preliminary Injunction is warranted, let alone on an emergency basis.

## LEGAL STANDARD

16. Appeals of interlocutory orders by a bankruptcy court are strongly disfavored, and should be granted only in "exceptional" circumstances. *See In re Red River Energy, Inc.*, 415 B.R. 280, 284 (2009) (S.D.Tex. 2009) (noting that the "basic policy of appellate jurisdiction strongly disfavors piecemeal appeals" except for under "exceptional circumstances"); *Clark–Dietz & Assocs. Engineers, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir.1983) (noting that "[t]he basic rule of appellate jurisdiction restricts review to final judgments, avoiding the delay and extra effort of piecemeal appeals" noting that such "appeals are exceptional."); *In re Hunt Int'l Res. Corp.*, 57 B.R. 371, 372 (N.D.Tex.1985) ("Because interlocutory appeals interfere with the overriding goal of the bankruptcy system, expeditious resolution of pressing economic difficulties, they are not favored"); *In re Global Marine, Inc.*, 108 B.R. 1007, 1009 (S.D. Tex, 1988) ("In considering whether to review this interlocutory order, the Court takes due notice of the strong policy behind the finality requirement, which favors avoiding piecemeal appeals, interference with bankruptcy administration, and waste of judicial resources."). To that end, leave to appeal an interlocutory order "should be granted only where circumstances are present which justify overriding the general policy of not allowing such appeals." *Hunt Int'l*, 57 B.R. at 372 (internal citations omitted).

17. The Fifth Circuit has not expressly set forth the standard that should be applied by the district courts in considering whether to grant leave to appeal interlocutory orders from a bankruptcy court under 28 U.S.C. § 158, but has recognized that "the vast majority of district courts faced with the problem have adopted the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from district court orders." *Matter of Ichinose*, 946 F.2d 1169, 1177 (5th

7

Cir. 1991); *see also Sunbelt Works, Inc. v. Sommers*, 2007 WL 954741, *1 (S.D.Tex. 2007) (same); *Hunt Int'l*, 57 B.R. at 372 (same).  Under this standard, an interlocutory order of the bankruptcy court is appealable only when it consists of three distinct elements: "(1) a controlling issue of law must be involved; (2) the question must be one where there is substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the litigation."  *Ichinose*, 946 F.2d at 1177; *see also Panda Energy Int'l, Inc. v. Factory Mut. Ins.*, 3:10-CV-003-K, 2011 WL 610016, at *4 (N.D. Tex. Feb. 14, 2011) (same). "Every ground in § 1292(b) must be met in order for the interlocutory appeal to be considered; these are not factors to be weighed and balanced."  *Panda Energy*, 2011 WL 610016, at *4; *see also Red River Energy*, 415 B.R. at 284 (noting that in light of the general policy disfavoring appeals of non-final orders, "all three of these criteria must be met before an order is properly certified for interlocutory appeal."); *Ryan v. Flowserve Corp*., 444 F. Supp. 2d 718, 721 (N.D. Tex. 2006) (noting that the terminology of § 1292(b) "was intended to restrict the category of cases suitable for permissive appeal"); *In re Supp. Spot, LLC*, No. H–09–1144, 2009 WL 1343165 at * 1 (S.D.Tex. 2009) (same).  The burden rests with the appellant to demonstrate why the district court should grant the appeal.  *See In re Cent. Louisiana Grain Co-op., Inc.*, 489 B.R. 403, 410 (W.D. La. 2013); *Clark–Dietz*, 702 F.2d at 68 (noting that to determine whether a controlling question of law is involved, "we must necessary rely on the would-be appellant to supply" a statement of the "precise nature of the controlling question of law involved" and the "argument showing the grounds for the asserted difference of opinion and the way in which the allowance of the petition would materially advance the ultimate termination of the litigation.") (internal quotations omitted).

8

**ARGUMENT**

18.   Appellant fails to show that exceptional circumstances warrant granting leave to appeal the Preliminary Injunction.

A.   **There is No Controlling Question of Law**

19.   The issues raised in the Motion do not involve any controlling questions of law.

20.   "Whether an issue of law is *controlling* generally hinges upon its potential to have some impact on the course of the litigation" such as when, for instance, "reversal of the district court's opinion would result in dismissal of the action." *Ryan*, 444 F. Supp. 2d at 723 (emphasis in original) (internal citations and quotations omitted). An issue of law has also been deemed "controlling" where the certified issue has precedential value for a large number of cases. *See id.*

21.   That is not the case here. The predominant issues related to the Preliminary Injunction are heavily based in *fact* – not law. Thus, appeal of the Bankruptcy Court's Order would necessarily involve a review of the entire record, of which the Court has been intimately familiar with since just after its inception of the Case in November 2019. For this reason alone, appellate review of the Preliminary Injunction is inappropriate. *See Smith v. AET Inc., Ltd.*, Nos. C-07-123, 2007 WL 1644060, at *6 (S.D.Tex. 2007) (denying leave to appeal bankruptcy court's order where issue at hand is "heavily fact-based" in an Adversary Proceeding that is "grounded in factual issues" and therefore, not "appropriate for interlocutory review under the standard set forth in 28 U.S.C. § 1292(b)") (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir.2004) (Section 1292 certification should be reserved "for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts"); *Garner v.*

9

*Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) (noting that "question[s] of fact or matter[s] for the discretion of the trial court" are not appropriate issues for interlocutory appeals); *Clark–Dietz*, 702 F.2d at 69 (holding that "fact-review" issues are inappropriate for § 1292 review, and "even those that are legal may be foreclosed by the fact findings of the district court."); *Ryan*, 444 F. Supp. 2d at 722 ("[R]esolving the issue presented should not require the appeals court to go 'hunting through the record' to see whether 'a genuine issue of material fact may be lurking there.'") (internal citations omitted).

**B.      There is No Substantial Difference of Opinion**

22.     For largely these same reasons, Appellant equally fails to demonstrate that the Preliminary Injunction involves a substantial ground for disagreement.

23.     "Substantial grounds for difference of opinion have been found where all other courts of appeals have reached results contrary to the decision of the lower court … or the circuits are in dispute and the circuit in which the lower court sits has not decided the issue[.]" *Panda Energy*, 2011 WL 610016, at *4 (internal citations omitted); *see also In re Hallwood Energy, L.P.*, BR 09–31253–SGJ–11, 2013 WL 524418, at *3 (N.D. Tex.2013) (noting that there exists a substantial ground for difference of opinion if "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.") (internal quotations omitted).  Substantial grounds for difference of opinion do *not* exist merely because a party claims the bankruptcy court ruled incorrectly. *See id.*

24.     Here, there are no "novel" or complex legal questions presented.  Rather, the decision to grant preliminary injunctive relief rested with the discretion of the Bankruptcy

10

Court after a fact-intensive assessment of the evidence and witness credibility, and after multiple lengthy hearings.  *See Global Marine* 108 B.R. at 1009 (finding that no "substantial ground for disagreement exists" where the "issues rest within the sound discretion of the bankruptcy review after a fact-intensive review"); *Hunt Int'l*, 57 B.R. at 372 (finding that there was no "substantial grounds for a difference of opinion on the relevant legal principles" where ruling was a "matter committed to the sound discretion of the Bankruptcy Court."); *In re American Freight System, Inc.*, 153 B.R. 316, 321 (D. Kan. 1993) (denying appellate review of interlocutory order where issue at hand was not "a complex and multifaceted case that would justify a piecemeal approach to appeals."); *Clark-Dietz*, 702 F.2d at 69 ("As they are posed, none of the questions is particularly difficult and most appear to be merely fact-review questions"); *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (noting that the decision to grant or deny a preliminary injunction "lies within the discretion" of the trial court, and will be reversed only where the findings of fact by the court are "clearly erroneous").

### C.      An Appeal Would Not Advance this Case

25.     Finally, and for all these same reasons, permitting an immediate appeal of the Preliminary Injunction would not materially advance the ultimate termination of the Case.

26.     "An appeal materially advances the termination of litigation when it accelerates or simplifies trial proceedings."  *Panda Energy*, 2011 WL 610016, at *4.  As discussed above, the Preliminary Injunction does not concern a "controlling question of law in which reversal of the Bankruptcy Court's order would either (1) terminate the action *or* (2) materially affect the outcome of litigation." *Cent. Louisiana Grain*, 489 B.R. at 411 (internal quotations omitted); *see also Ryan*, 444 F. Supp. 2d at 723 ("Courts have found the issue of whether an interlocutory appeal involves a controlling question of law to be 'closely tied' to the requirement that the appeal will materially advance the ultimate termination of the litigation[,]"

11

further noting that a controlling question of law "at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation—thereby saving time and expense for the court and the litigants." (quoting ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, § 3930 at 432).

27.     Indeed, rather than advancing this Case, permitting an immediate appeal of the Preliminary Injunction would have the exact opposite effect by causing delay. *See In re Cella III, LLC*, 619 B.R. 627, 634 (E.D.La. 2020) (finding that granting leave to appeal the bankruptcy court's interlocutory order "would likely cause delay, rather than materially advance, the ultimate termination of the litigation" since the parties would need to submit briefs prior to this Court's considering the appeal, and where the bankruptcy court has already begun scheduling the case for trial). Denial of the interlocutory appeal would leave this case in front of the Bankruptcy Court, which, as noted above, has been deeply entrenched in this case since its inception for over a year. The Bankruptcy Court's intimate knowledge of the facts of this matter makes it better equipped to efficiently resolve these issues and "well-suited to interpret its own orders." *See Panda Energy*, 2011 WL 610016, at *4 (finding that movant failed to show that appeal of bankruptcy court's interlocutory appeal would not materially advance the termination of litigation where the bankruptcy court "has been involved with this dispute for almost two years" and is ""much better suited to resolve these issues, and is ready to do so almost immediately."); *Cent. Louisiana Grain Co-op.,* 489 B.R. at 414 (denying leave to appeal where it "would merely serve to prolong the case" and finding that "the more just and efficient course would be for the case to play out in the Bankruptcy Court and then, should any party wish to appeal, appeal the entire matter to the appropriate venue.").

28.     Several aspects of Appellant's contentions warrant a specific response.

12

29. Appellant contends that the "injunction is designed to prevent Appellant from exercising his legal rights in connection with the Debtor's Plan, and the confirmation hearing is set to occur on February 2, 2021." This contention is false. The Preliminary Injunction expressly provides that "[f]or the avoidance of doubt, this Order does not enjoin or restrain [Appellant] from . . . seeking judicial relief upon proper notice or from objecting to any motion filed in this Bankruptcy Case." **App'x at 239 n2**. Thus, in the less than three weeks since the Preliminary Injunction was entered, Appellate has filed (a) multiple Witness and Exhibit lists [Docket Nos. 1721, 1742, and 1795], and presented evidence in a contested matter; (b) an objection to a motion filed by the Debtor [Docket No. 1784]; and (c) a joinder to a motion for the appointment of an Examiner [Docket No. 1756]. By its terms, and in practice, the Preliminary Injunction simply does not limit in any way Appellant's rights to participate in the bankruptcy case.

30. Appellant also complains that he is prevented from communicating with certain unnamed former employees. Appellant's complaint rings hollow for three independent reasons. First, the Preliminary Injunction is expressly limited to two ex-employees, Scott Ellington and Isaac Leventon (the Debtor's former General Counsel and Assistant General Counsel, respectively).[6] Second, the Court considered various options to address Appellant's communications with the Debtor's former in-house counsel but settled on the blanket ban only after expressing "huge concerns about conflicts of interest here." Finally, and perhaps most importantly, counsel for Messrs. Ellington and Leventon expressly agreed to this provision. **App'x at 218-225.**

---

[6] The evidence will show that Messrs. Ellington and Leventon were terminated for cause promptly after Appellant testified in a deposition in advance of the Hearing.

13

31. Appellant's generalized contentions that the Preliminary Injunction's restrictions are "overbroad, unclear, and potentially unlimited in scope" are simply not the type of issues contemplated for appeal under the strict standard set forth in section 1292(b). These assertions are also belied by the explicit language of the Order. As described *infra*, the Order clearly delineates which individuals Appellant is prohibited from communicating with, under what specific conditions, and the timeframe within which the Order will remain in effect. **See App'x at 239-40.**[7] Appellant's contention that the Preliminary Injunction restricts his "First Amendment rights" is equally frivolous and should be summarily rejected by the Court.[8] Any additional claims raised in the Motion are otherwise without merit. In sum, Appellant's assertion that granting leave to appeal will allow for "prompt resolution of the legal questions raised" by the Preliminary Injunction is unsupported and inadequate. *See Hunt Int'l*, 57 B.R. at 373 (denying leave to appeal interlocutory order where movant's "unsupported and conclusory statements are both inadequate and unconvincing."); *Global Marine*, 108 B.R. at 1009 (denying leave where appellant's contention regarding how bankruptcy court's interlocutory order would affect reorganization process was "meritless" and any modifications to the order could be made by bankruptcy court in future proceedings).

32. For the foregoing reasons, Appellant has failed to demonstrate that exceptional circumstances exist to warrant appeal of the Preliminary Injunction pursuant to

---

[7] Although Appellant challenges the Preliminary Injunction's restriction on his "speaking with two former employees of the Debtor" on the grounds that they are no longer employed by the Debtor and are "friends" of his, (Motion to Expedite ¶ 11), these two former employees are Isaac Leventon and Scott Ellington – the two individuals with whom Appellant colluded in order to strategize against the Debtor.

[8] Appellant has not cited any case on point to support the notion that the Preliminary Injunction rises to level of a First Amendment issue. Appellant's citation to *Carroll v. President & Com'rs of Princess Anne*, 393 U.S. 175 (1968) is entirely inapplicable. (*See* Motion to Expedite ¶ 22). That case dealt with whether the issuance of an *ex parte* injunction restraining members of a political party from holding rallies was incompatible with the First Amendment. Appellant's citation to *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) is similarly misplaced. That case dealt with an injunction against anti-abortion protestors, and whether the injunction served "governmental interests."

14

§ 1292(b).  *See Hunt Int'l*, 57 B.R. at 372 (denying leave to appeal interlocutory order where party failed to standard under § 1292(b) and no other "circumstances which justify granting leave to appeal" exist); *Global Marine*, 108 B.R. at 1009 (denying leave to appeal bankruptcy court's interlocutory order where appellant failed to satisfy standard in § 1292(b) and no "exceptional circumstances" warranted a grant of "immediate appellate review."). Accordingly, Appellant's Motions should be denied.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court deny the Motions, and grant any further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: January 27, 2021 | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Jeffrey N. Pomerantz (CA Bar No. 143717)<br>Ira D. Kharasch (CA Bar No. 109084)<br>John A. Morris (NY Bar No. 266326)<br>Gregory V. Demo (NY Bar No. 5371992)<br>Hayley R. Winograd (NY Bar No. 5612569)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>Email:  jpomerantz@pszjlaw.com<br>          ikharasch@pszjlaw.com<br>          jmorris@pszjlaw.com<br>          gdemo@pszjlaw.com<br>          hwinograd@pszjlaw.com<br><br>-and-<br><br>**HAYWARD PLLC**<br><br>*/s/ Zachery Z. Annable*<br>Melissa S. Hayward<br>Texas Bar No. 24044908<br>MHayward@HaywardFirm.com<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>ZAnnable@HaywardFirm.com<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110<br><br>*Counsel for Highland Capital Management, L.P.* |

16